<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| TRUSTEES OF THE UNITED FOOD AND COMMERCIAL WORKERS UNION LOCAL 312 BENEFIT FUND, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>ALLIANCE HEALTHCARE, LLC,<br><br>Defendant. | Civil Action No. 22-06311 (GC) (RLS)<br><br>**MEMORANDUM ORDER** |

<u>**CASTNER, District Judge**</u>

This matter comes before the Court upon Plaintiffs Trustees of the United Food and Commercial Workers Union Local 312 Benefit Fund (the "Fund"), for themselves and the Fund, and United Food and Commercial Workers Union Local 312's (the "Union" or "UFCW Local 312") Motion for Default Judgment against Defendant Alliance Healthcare, LLC, under Federal Rule of Civil Procedure ("Rule") 55(b).  (ECF No. 11.)

In October 2022, Plaintiffs sued Alliance, a New Jersey-based nursing-home operator, under the Employee Retirement Income Security Act of 1974 (ERISA) and the Labor-Management Relations Act of 1947 (LMRA).  (ECF No. 1.)  Plaintiffs seek to recover unpaid benefit contributions that Alliance was obligated to pay the Fund.  On March 10, 2023, the Clerk entered default against Alliance.  (ECF Docket Sheet entry dated Mar. 10, 2023.)  On June 14, 2023, the Clerk entered a notice of call for dismissal under Local Civil Rule 41.1(a).  (ECF No. 8.)  Plaintiffs then moved for default judgment.  (ECF No. 11.)

A party is not entitled to a default judgment as of right; "the entry of such a judgment is left primarily to the discretion of the district court." *DirecTV, Inc. v. Asher*, Civ. No. 03-1969, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984)). "The Court need not accept the moving party's legal conclusions, because [e]ven after default . . . it remains for the court to consider whether the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Id.* (citation and internal quotation marks omitted). The Court also need not accept the moving party's factual allegations regarding damages as true. *United States v. Thompson*, Civ. No. 16-0857, 2017 WL 3634096, at *1 (D.N.J. July 20, 2017) (quoting *Doe v. Simone*, Civ. No. 12-5825, 2013 WL 3772532, at *2 (D.N.J. July 17, 2013)).

Several discrepancies in the pleadings create issues as to liability and damages that make default judgment presently inappropriate.

For starters, the Complaint's allegations and supporting documents do not align with the Motion's. The Complaint alleges that "Alliance was party to and agreed to abide by the terms and conditions of the CBA[1] with the Union or one or more local labor unions or district councils affiliated with the Union." (ECF No. 1 ¶ 16.) "By virtue of the CBA," the Complaint continues, "Alliance agreed to abide by the terms of the Agreement and Declaration of Trust which governs the Fund ('Trust Agreement')." (*Id.* ¶ 17.) "The Trust Agreement sets forth the rules and regulations with respect to participation in and administration of the Fund" — "[i]n particular, the Trust Agreement, in accordance with federal law and administrative regulations, requires that fringe benefit contributions be made for eligible participants on a timely basis." (*Id.*) In sum, the

---

[1] The term *CBA* is not defined in the Complaint, though Plaintiffs' motion papers clarify that it means collective bargaining agreement and attach a copy of the agreement.

Complaint alleges that Alliance agreed to follow the CBA and the Trust Agreement.  (*Id.* ¶¶ 16-23.)

Yet the default-judgment motion papers do not mention the Trust Agreement.  Instead, Plaintiffs allege that Alliance's obligations flowed from a "Memorandum of Agreement (MOA)" and "Collective Bargaining Agreement (CBA)."  (ECF No. 11-2 ¶¶ 5-6.)  The MOA is between the Union and Andover Subacute and Rehab.  (ECF No. 11-5 at 2.[2])  And the CBA is between the Union and Limecrest Subacute & Rehab and Woodland Behavioral & Nursing, which Plaintiffs allege reflects a name-change of the two Andover facilities involved in the agreements.  (*Id.* at 5; *see* ECF No. 11-2 ¶ 6 (alleging that "Andover changed its facility name to Limecrest Subacute & Rehab (Building 1) and Woodland Behavioral & Nursing (Building 2)").)  Under the CBA, the "Employer," identified as the Limecrest and Woodland facilities, agreed to "provide medical coverage" and "make contributions" to the Fund "for all Union Members" at a rate of "$35.00 per Member per month for the term of this agreement," July 1, 2021, to June 30, 2024.  (ECF No. 11-5 at 4-5, 15-16 (Articles 20 & 22), 19.)  But contrary to Plaintiffs' allegation in the Complaint, Alliance is not a "party to" the CBA.  (*See* ECF No. 1 ¶ 16.)  In fact, neither the CBA nor the MOA mentions "Alliance."

Alliance's ties to Plaintiffs' claim are unclear.  Scott Lonano, the Fund Administrator, whose certification Plaintiffs submit in support of their motion, merely refers to Andover as "now Alliance," without providing any support or further explanation for the name-change.  (ECF No. 11-2 ¶ 5.)  In addition, Lonano certifies that "[t]he corporate officers of Alliance are the owners of the nursing home" and that "[t]he nursing home is licensed and operated by . . . Alliance," who

---

[2]     Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

"remits contribution reports and payments to [Lonano's] office as required under the CBA." (*Id.* ¶¶ 6-7.) In support, Lonano attaches only a "Benefit Contribution payment ledger," which depicts a spreadsheet titled "Alliance Health Care Andover (Woodland & Limecrest) Fund Money Owed." (*Id.* ¶ 7; ECF No. 11-6 at 19.) This spreadsheet provides no self-evident support for Lonano's statements, which muddy the nature of Alliance's involvement with the nursing homes.

To hold Alliance to the Union's agreements with Andover and its facilities, Plaintiffs must provide more details, preferably with supporting documents, as to the connection between Andover and Alliance. Without a clear understanding of that connection, the Court cannot find that default judgment against Alliance is appropriate.[3]

Plaintiffs' damages proofs hold up no better. To prove damages, Plaintiffs' counsel certifies that the contribution amount owed to the Fund is $82,565.00, according to business records that counsel received from the "Fund Administrator's office." (ECF No. 11-1 ¶ 8.)[4] To prove the interest owed on the contribution amount, Plaintiffs' counsel cites (1) the Fund's "Collection Policy and Procedures" and (2) an "interest and liquidated damages spreadsheet showing the damages accrued from . . . September 2021 through April 2023" — neither of which appears in Lonano's certification. (*Id.* ¶ 10; ECF No. 11-6 at 1-14, 20-26.) This won't suffice. Plaintiffs must provide the Court with more, such as a certification by Lonano or another of Plaintiffs' representatives with personal knowledge of the amounts owed, the calculation of the

---

[3] If Alliance's name appears in the motion's supporting exhibits, it was incumbent on Plaintiffs to bring the appearance to the Court's attention. *See DeShields v. Int'l Resort Properties Ltd.*, 463 F. App'x 117, 120 (3d Cir. 2012) ("[J]udges are not like pigs, hunting for truffles buried in briefs." (internal quotation omitted)).

[4] Though unpaid amounts should be certified by someone like Lonano who has personal knowledge of the facts, rather than counsel, the Court accepts counsel's certification because Lonano's certification authenticates the business records supporting the damages claim. (*See* ECF No. 11-2 ¶ 7.)

4

interest or other damages accrued, and any supporting documents to substantiate the amount of damages in this case. *See Thompson*, 2017 WL 3634096, at *1 ("[I]f a court finds evidentiary support to be lacking, it may order or permit a plaintiff seeking default judgment to provide additional evidence in support of the allegations.").

For the reasons set forth above, and other good cause shown,

**IT IS** on this 17th day of January 2024 **ORDERED** as follows:

1. Plaintiffs' Motion for Default Judgment (ECF No. 11) is **DENIED** without prejudice.

2. Plaintiffs have 30 days from the entry of this Memorandum Order to file a renewed motion for default judgment that resolves the above-mentioned discrepancies or otherwise sufficiently proves Alliance's liability and the amount of damages that Plaintiffs seek, including calculations and any other proof in support.

3. The Clerk's Office is directed to **TERMINATE** Plaintiffs' Motion (ECF No. 11).

4. Plaintiffs must serve Alliance with a copy of this Memorandum Order within 14 days after its entry.

s/ Georgette Castner
**GEORGETTE CASTNER**
**UNITED STATES DISTRICT JUDGE**